Brad T. Hunsicker
(Wyoming State Bar No. 7-4579)
WINSHIP & WINSHIP, P.C.
100 North Center Street, Sixth Floor
PO Box 548
Casper, WY 82602

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| In re: ) | |
| ) | |
| WESTERN BIOMASS ENERGY, LLC, ) | Case No. 12-21085 |
| ) | CHAPTER 11 |
| Debtor. ) | |
| ) | |

**MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING DEBTOR-IN-POSSESSION TO OBTAIN POST PETITION UNSECURED DEBT NUNC PRO TUNC TO 11/09/12, (II) AUTHORIZING DEBTOR-IN-POSSESSION TO EXECUTE AND ENTER INTO LOAN AGREEMENT EFFECTIVE AS OF 11/09/12, AND (III) ALLOWING FOR ADMINISTRATIVE, SECURED AND SUPERPRIORITY CLAIM**

**COMES NOW** Western Biomass Energy, LLC ("WBE") as Debtor-in-Possession, by and through its counsel, and pursuant to 11 U.S.C. §§ 105 and 364(c) and (d), requests that the Court authorize it to execute and enter into a loan agreement with Blue Sugars Corporation ("Lender") in order to borrow up to the principal sum of $250,000.00 *nunc pro tunc* to November 09, 2012, and in support hereof shows the Court as follows:

1. On October 31, 2012 (the "Petition Date"), WBE commenced this case by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Wyoming (the "Bankruptcy Court").

2. WBE has continued in the possession of its property and has continued to operate and manage its business as a debtor-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108.

3. WBE is one of the first second-generation cellulose based ethanol ("CBE") demonstration plants in the United States. The plant is located in Upton, Wyoming and was designed to convert wood and wood waste products into ethanol. The WBE plant was built to serve as a demonstration and research and development facility and has the future potential, with additional capital investment, to operate with a capacity of approximately 1.5 million gallons of CBE per year.

4. WBE was founded in April 2000 by several members of management of KL Process Design Group LLC ("KLPDG") which had experience in building and operating ethanol plants. An Information Memorandum was issued to raise money to accomplish this goal and $950,000.00 was provided by 12 investors. Based on the Information Memorandum and related documents, KLPDG would own approximately 64% of WBE. The $950,000.00, plus additional borrowed money, were used to build WBE's scaled-down plant with used equipment. Construction on its plant began during the year ending December 31, 2006, and was substantially completed in August 2007. However, due to limited funding, the WBE plant never achieved a completion level that would permit commercial production volumes.

5. In September 2008 through a reverse merger with a public company, KLPDG became known as KL Energy Corporation ("KLE") which subsequently changed its name in June 2012 to Blue Sugars Corporation. For several years prior to this organizational change, KLPDG and KLE continued to use the plant on a limited basis for demonstration and R&D purposes. WBE had no other customers and no other source of funding to remain operational.

6. In August 2010, KLE signed a joint development agreement ("JDA") with Petrobras to partially retrofit the WBE plant so that it could perform production and yield tests on bagasse, the fibrous residue remaining after the extraction of juice from the crushed stalks of

sugar cane. In November 2011, after successfully completing the first JDA, Petrobras amended the JDA to expand the plant retrofit and to perform additional production and yield tests on bagasse. Through the agreement with Petrobras, WBE has been able to continue to research and refine the cellulose conversion technology, which has been substantially funded by KLE/Lender since 2009, while also demonstrating the commercial viability for this type of technology.

7. WBE, which was treated and accounted for as a cost center since its inception by its majority owner, has been totally reliant on funding provided by KLE/Lender. Since completing the JDA with Petrobras in October 2012, Lender has not secured new income from development contracts with third parties or funding to conduct its own development programs at the WBE plant. As a result, this funding shortfall forced WBE to seek protection under the Bankruptcy Code.

8. WBE has sought debtor-in-possession ("DIP") financing from two alternate parties: Security National Bank (Omaha, NE) with whom WBE has a $1.0M loan balance that is secured by WBE assets, and EFO Holdings (Dallas, TX), which is a venture capital firm that invests in, and provides DIP financing to, distressed businesses. Security National Bank declined interest in providing DIP financing because of its unfavorable experience with ethanol businesses and EFO Holdings declined interest in providing DIP financing because of the uncertain revenue stream for WBE. As such, Lender continues to be the only entity willing to provide DIP financing to WBE.

9. WBE requires the infusion of capital in order to continue to maintain its plant at a minimum activity level until a bankruptcy plan can be developed or an asset sale consummated. WBE's primary goal is to develop a bankruptcy plan that will permit WBE to exit bankruptcy and continue operating its plant for research and demonstration purposes for the benefit of its

creditors and its customers. Further, if it is determined that WBE's plant must be liquidated to maximize the value of its estate, the plant will have a significantly higher realizable value for all creditors if it is active rather than dormant.

10. WBE has negotiated a post-petition loan agreement ("Loan Agreement") attached hereto with Lender that, if approved by this Court, will provide it with liquidity in this case while it formulates a plan of reorganization. The following are the principal terms of the Loan Agreement:

  a. Borrower – WBE

  b. Lender – Blue Sugars Corporation

  c. Amount – Up to $250,000.00

  d. Interest Rate – Twelve percent (12%) per annum

  e. Term – The earlier of (a) the sale of all or substantially all of the assets of the Borrower; (b) the conversion of the Borrower's bankruptcy case to a case under Chapter 7 of the Bankruptcy Code; (c) the dismissal of the Borrower's bankruptcy case; (d) any change of control of the Borrower including the appointment of a trustee, receiver, or liquidating officer approved by the Bankruptcy Court; or, (e) upon the entering of an order confirming the Borrower's plan of reorganization or plan of liquidation pursuant to 11 U.S.C. § 1129.

  f. Purpose – Fund payroll and other necessary and ordinary expenses of the Borrower in its daily business operations.

  g. Security – An administrative expense claim having priority over any or all administrative expenses of the kind specified in 11 U.S.C. § 503(b); a

perfected first priority lien pursuant to 11 U.S.C. § 364(c)(2) upon all unencumbered property of the Borrower; and, a first superpriority lien pursuant to 11 U.S.C. § 364(d) upon all property of the Borrower.

11. WBE will not be able to pay its payroll and to carry on its business without the ability to borrow funds from Lender.

12. WBE is not able to obtain the required funds in the form of unsecured debt allowable under 11 U.S.C. § 503(b)(1) as an administrative expense pursuant to 11 U.S.C. § 364(a) or (b), or unsecured debt only having priority afforded by 11 U.S.C. § 364(c)(3), without having to grant a secured priming lien pursuant to 11 U.S.C. § 364(d)(1), an administrative claim pursuant to 11 U.S.C. § 364(c)(1) and a first priority secured lien pursuant to 11 U.S.C. § 364(c)(2).

13. Lender has a 64% membership interest in WBE and is a prepetition secured creditor whereby it is owed approximately $30 million by WBE, which is secured by all assets of WBE.

14. Courts will evaluate the facts and circumstances of a debtor's case and will accord significant weight to the debtor's business judgment regarding its necessity for obtaining financing. See, e.g., *Bray v. Shenandoah Fed. Sav. & Loan Ass'n (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990). WBE has exercised sound business judgment in determining that a post-petition loan is appropriate. Without the liquidity provided by the proceeds from the Loan Agreement WBE will be unable to retain employees essential to the orderly operation of its business.

15. WBE's pre-petition secured creditors, other than Lender, with liens on property of the estate on which Lender's proposed senior lien will be granted will be adequately protected by the equity cushion associated with the property in which they have a lien.

16. WBE requests that any proceeds from the Loan Agreement shall not constitute "cash collateral" as that term is defined under the Bankruptcy Code regarding any prepetition security agreement executed by WBE.

17. The Loan Agreement was negotiated in good faith and at arms length and the relief requested herein is necessary, essential and appropriate for the continued operation of WBE's business and the management and preservation of its property. It is in the best interests of WBE's estate to allow the execution of the Loan Agreement. Credit will be extended under the Loan Agreement in good faith and Lender is entitled to the protection and benefits afforded by 11 U.S.C. § 364(e). WBE believes that there is no debtor in possession financing on terms equal or better than the financing proposed in the Loan Agreement. Accordingly, WBE should be granted authority to borrow funds from Lender on the administrative, secured and superpriority basis described above pursuant to 11 U.S.C. §§ 364(c)(1), (c)(2) and (d).

**WHEREFORE**, WBE respectfully requests that the Court enter an Order allowing WBE (I) to incur post petition unsecured debt *nunc pro tunc* to November 9, 2012; (II) to enter into the Loan Agreement effective as of November 9, 2012 and borrow funds to enable it to meet its payroll and other necessary and ordinary expenses of the Borrower in its daily business operations and that the borrowed funds shall not constitute cash collateral; and, (III) to grant Lender an administrative, secured and superpriority claim as more particularly described in the Loan Agreement and as set forth in this Motion and for such other and further relief that the Court deems just.

**DATED** this 7th day of December, 2012.

                              WESTERN BIOMASS ENERGY, LLC

                By:__/s/_____
                   Brad T. Hunsicker
                   (Wyoming State Bar No. 7-4579)
                   WINSHIP & WINSHIP, P.C.
                   100 N. Center, Suite 600
                   P.O. 548
                   Casper, WY  82602
                   (307) 234-8991

## **CERTIFICATE OF SERVICE**

I, Brad T. Hunsicker, hereby certify that a true and correct copy of the foregoing **MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING DEBTOR-IN-POSSESSION TO OBTAIN POST PETITION UNSECURED DEBT NUNC PRO TUNC TO 11/09/12, (II) AUTHORIZING DEBTOR-IN-POSSESSION TO EXECUTE AND ENTER INTO LOAN AGREEMENT EFFECTIVE 11/09/12, AND (III) ALLOWING FOR ADMINISTRATIVE, SECURED AND SUPERPRIORITY CLAIM** was served upon **The Office of the United States Trustee**, **all parties requesting notice and registered on the CM/ECF system as stated in the mailing matrix attached hereto,** *electronically*, and **Debtor's prepetition secured** as stated on the Debtor's mailing matrix per the attached mailing matrix entitled "Secured Creditors", by depositing copies thereof in the United States mail, postage prepaid, as addressed on the matrix, this 7th day of December.

                              ___/s/_____
                              Brad T. Hunsicker