Gregory C. Dyekman - Wyo. Bar No. 5-1858
Dray, Dyekman, Reed & Healey, P.C.
204 East 22nd Street
Cheyenne WY 82001-3799
(307) 634-8891 – Telephone
(307) 634-8902 – Facsimile
greg.dyekman@draylaw.com

ATTORNEYS FOR CREDITOR
SECURITY NATIONAL BANK OF OMAHA

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF WYOMING

IN RE:                                    )
                                          )
WESTERN BIOMASS ENERGY, LLC,              )        Case No. 12-21085
                                          )        Chapter 11
                      Debtor.             )

## SECURITY NATIONAL BANK OF OMAHA'S OBJECTION TO DEBTOR'S MOTION (1) FOR AN ORDER AUTHORIZING DEBTOR-IN-POSSESSION TO OBTAIN POST PETITION UNSECURED DEBT NUNC PRO TUNC TO 11/9/12, (II) AUTHORIZING DEBTOR-IN-POSSESSION TO EXECUTE AND ENTER INTO LOAN AGREEMENT EFFECTIVE AS OF 11/09/12, AND (III) ALLOWING FOR ADMINISTRATIVE, SECURED AND SUPERPRIORITY CLAIM

COMES NOW, Security National Bank of Omaha, by and through its attorneys, Dray, Dyekman, Reed & Healey, P.C., and objects to Debtor's Motion regarding Debtor-In-Possession Financing, filed by Debtor on December 7, 2012.

1.    Western Biomass Energy, LLC (WBE), the Debtor-In-Possession, seeks permission from the Court to enter a loan agreement with its parent corporation, Blue Sugars Corp. (Blue Sugars), *nunc pro tunc*, and provide Blue Sugars with an administrative, secured, superpriority claim, retroactive to November 9, 2012.

2.      WBE's motion should be denied for three reasons. First, authorizing the debtor to obtain Debtor-In-Possession financing *nunc pro tunc* is inconsistent with 11 U.S.C. § 364, governing post-petition financing. Second, granting a secured, superpriority claim to Blue Sugars would not be fair and reasonable because WBE is merely an alter ego of Blue Sugars. Finally, WBE has failed to demonstrate that the requirements of 11 U.S.C. § 364 (c) and (d) are satisfied to justify giving a secured, superpriority claim. Accordingly, the Court should deny Debtor's motion.

## BACKGROUND

3.      It is important to understand the relationship between the Debtor-In-Possession, WBE and the proposed Lender, Blue Sugars when evaluating the merits of Debtor's motion. Blue Sugars is WBE's majority shareholder and owns sixty-four percent of WBE stock. WBE is nothing more than the research and development arm of Blue Sugars, and is essentially a department of Blue Sugars that has been separated only for accounting and tax reasons, and not for true operational separateness. WBE's facilities have been used solely by Blue Sugars (and its predecessor organization). As stated in Debtor's motion, "WBE had no other customers and no other source of funding to remain operational." (WBE's Motion, at 2). In a nutshell, WBE is not in any way an operating entity, and is completely funded by and controlled by Blue Sugars.

4.      Throughout WBE's existence, WBE and Blue Sugars have operated as mere alter egos of each other. WBE's officers and directors are the same officers and directors as Blue Sugars. Prior to the filing of WBE's bankruptcy, Blue Sugars had always provided WBE with all of its income, took all of its revenues (if any were even

earned in the name of WBE), and failed to operate WBE as a separate entity except as a cost center. For example, all of the contracts with respect to which WBE's facilities were used are in Blue Sugars' name, and all revenue from the contracts were paid directly to Blue Sugars. WBE existed solely as a name and an accounting cost center through which Blue Sugars operated. At all times, even before this Bankruptcy, WBE was "totally reliant on funding provided by [Blue Sugars]." *Id.* at 3. Currently, WBE has zero (0) operating revenue and income, except for the funds provided to it by Blue Sugars, as has always been the case.

5. Prior to filing this motion, and without the permission of the court or the secured creditors of WBE, Blue Sugars allocated funds to WBE in order to pay four employees to keep WBE's plant open. Blue Sugars provided these funds, now characterized as loans by Blue Sugars, without obtaining authorization from the Court and with knowledge that the "loans" were not secured. Now, after Blue Sugars has continued to fund WBE through the bankruptcy, just as it did before bankruptcy, WBE asks this Court to retroactively authorize WBE to have a secured, superpriority claim on the funds allocated to WBE by Blue Sugars. Debtor's motion does not indicate that Blue Sugars will not continue to fund WBE without having a secured, superpriority claim. Instead, it is likely Blue Sugars will continue to provide WBE with resources to keep the plant open, even if it does not have a secured, superpriority claim.

## DISCUSSION

6.     WBE asks this Court to exercise its equitable powers under 11 U.S.C. §

105(a) to authorize its debtor-in-possession financing *nunc pro tunc*, to November 9,

2012.  The Court should not use its equitable powers to retroactively approve financing

*nunc pro tunc* by Blue Sugars because any order authorizing financing *nunc pro tunc* is

inconsistent with 11 U.S.C. § 364.  The court may issue "any order, process, or judgment

that is necessary or appropriate" to carry out the provisions of the Bankruptcy Code.  11

U.S.C. § 105(a).   The Court's equitable powers "can only be exercised within the

confines of the Bankruptcy Code." *Northwest Bank Worthington v. Ahlers*, 485 U.S. 197,

206 (1988).   The Court's equitable powers under § 105 "may not be exercised in a

manner that is inconsistent with the other, more specific provisions of the [Bankruptcy]

Code." *United States v. Richards (In re Richards)*, 994 F.2d 763, 765 (10th Cir. 1993)

(quoting *Landsing Diversified Prop.-II v. First Nat'l Bank and Trust Co. (In re W. Real*

*Estate Fund, Inc.)*, 922 F.2d 592, 601 (10th Cir.1990)).  Here, the language of 11 U.S.C.

§ 364 covers every situation for a debtor-in-possession to obtain financing as an

administrative, secured, and superpriority claim.  11 U.S.C. §§ 364(c), and (d) both state

that the debtor may obtain credit only "after notice and a hearing."  "[T]he Bankruptcy

Code is quite clear that a debtor must seek court approval to obtain credit." *In re Lehigh*

*Valley Professional Sports Clubs, Inc.*, 260 B.R. 745, 750 (Bankr. E.D. Pa. 2001).  Thus,

to obtain credit under 11 U.S.C. § 364(c) or (d), the debtor must seek approval from the

Court prior to obtaining the credit. Retroactively authorizing debtor to obtain credit as a

4

secured, superpriority claim, without notice and hearing, is completely inconsistent with

§ 364 of the Code.

The Court addressed an identical issue in *In re Lodge America, Inc.*, 259 B.R. 728

(Bankr. D. Kan. 2001). In that case, the debtor received a loan to pay its utilities without

obtaining court approval. The debtor asked the Court to approve the loan as an

administrative expense priority by an order *nunc pro tunc*. *Id.* at 734. After recognizing

that the Court's equitable powers may not conflict with expressed provisions in the

Bankruptcy Code, the Court stated:

> The language of § 364 covers every situation—in ordinary course of
> business and not in ordinary course of business, with a hearing and without
> a hearing. **Therefore, the court finds that to issue an order nunc pro
> tunc retroactively authorizing the debtor to obtain unsecured credit,**
> not in the ordinary course of business, and without notice and a hearing
> **would be inconsistent with the specific provisions of § 364 of the Code.**

*Id.* (emphasis added). Similar to that case, Blue Sugars allocated WBE money without

obtaining prior court approval and without notice and hearing. As the Court found in *In*

*Re Lodge America, Inc.*, providing authorization *nunc pro tunc* would be inconsistent

with the specific provisions addressing this debtor-in-possession financing in § 364 of the

Code. *See also In re Lehigh Valley Professional Sports Clubs, Inc.*, 260 B.R. 745 (Bankr.

E.D. Pa. 2001) (refusing to exercise its authority to approve debtor-in-possession

financing on nunc pro tunc basis); *In re City Wide Press, Inc.*, 110 B.R. 710 (E.D. Pa.

1990) (ruling that nunc pro tunc approval under 11 U.S.C. § 364(d) of a superpriority

security interest for postpetition services was an abuse of discretion). Accordingly, the

Court must deny Debtor's motion for retroactive authorization to obtain financing.

7.     Next, Blue Sugars seeks authorization under 11 U.S.C. §§ 364(c) and (d)

for secured and superiority claims. Allowing a secured, superpriority claim under §§

364(c) and (d) is an extraordinary remedy that should be granted only as a last resort.

This Court must make some difficult findings under the circumstances of this case to

afford the relief sought by WBE:

> In order to secure approval of post-petition financing pursuant to 11 U.S.C.
> §§ 364(c) and/or (d), the debtor-in-possession bears the burden of proving
> the following:
>
>> First, that the proposed financing is an exercise of sound and
>> reasonable business judgment; second, that no alternative financing
>> is available on any other basis; third, that the financing is in the best
>> interests of the estate and its creditors; and, as a corollary to the first
>> three points, that no better offers, bids, or timely proposals are
>> before the Court.
>
> *In re Western Pacific Airlines, Inc.*, 223 B.R. 567, 572 (Bankr. D. Colo.
> 1997). Other iterations of these basic requirements include showing that 1)
> the financing arrangement is necessary to preserve assets of the estate, and
> 2) the arrangement is otherwise fair and reasonable. *In re Crouse Group,
> Inc.*, 71 B.R. 544, 546 (Bankr. E.D. Pa. 1987).

*In re Phase-I Molecular Toxicology Inc.*, 285 B.R. 494, 495-96 (Bankr. D. N.M. 2002).

Courts also consider "whether the terms of the proposed financing are fair, reasonable

and adequate, given the circumstances of the debtor-borrower and the proposed lender;

and (7) whether the financing agreement was negotiated in good faith and at arm's length

between debtor and proposed lender." *Bland v. Farmworkers Creditors*, 308 B.R. 109

(S.D. Ga. 2003). The Court should deny WBE's motion because these elements are not

met in this case.

8.     Here, WBE seeks to obtain post-petition financing from its parent corporation—Blue Sugars. Blue Sugars is the majority owner of WBE.  Throughout their existence, Blue Sugars has failed to treat WBE as a separate operating entity, has failed to obey corporate formalities, has commingled funds, has sold collateral held in WBE's name, and without permission of the secured creditor, taken the proceeds for Blue Sugars instead of paying the secured creditor, and is simply an alter-ego of WBE.  Blue Sugars is an owner and purported creditor of WBE and is now attempting to jump to first priority with this debtor-in-possession "financing" which is nothing more than another allocation of funds from the parent company, or another infusion of equity.

9.   Blue Sugars is also an insider of WBE.  *See* 11 U.S.C. § 101(31(B)(iii) (defining an insider as "a person in control of the debtor").  Debtor-in-possession loans from insiders are rarely approved by courts.  *See In re Philadelphia Newspapers, LLC*, 445 B.R. 450, 465 (Bankr. E.D. Penn. 2010) ("the fact that [proposed lender] was an insider made it even less likely that a DIP loan funded by him could be approved . . . there was never a realistic chance that [proposed lender's] DIP loan would be the loan that would carry the Debtors through their reorganization").  That statement could certainly be made here, as well.  These loans are rarely approved because they are not arm's length transactions and there is serious concern about the good faith involved in the transaction.

10.     The term arm's length means "dealings between two parties **who are not related or not on close terms** . . ." *Black's Law Dictionary*, 123 (9th ed. 2009) (emphasis added).  By definition, the allocation of funds now before the court was not an

7

arm's length transaction. Blue Sugars is WBE's majority shareholder, parent company, and an insider. Furthermore, it is difficult to argue this is an arm's length loan when WBE is controlled entirely by Blue Sugars and has always been completely dependent on funding from Blue Sugars as Blue Sugars' research and development arm.

11.    The Court addressed an identical issue in *In re St. Mary Hospital*, 86 B.R. 393, 395 (Bankr. E.D. Pa. 1987). In that case, the debtor sought approval pursuant to § 364(c) of a financing arrangement between the debtor hospital and its parent company. *Id.* The arrangement would give the parent company a superpriority lien on all assets of the debtor in return for providing operating funds. *Id.* After looking at the relationship between the debtor in possession and the lender, and the results of the transaction as a whole, the court declined to approve the financing agreement between the parent company and its subsidiary. *Id.* at 401. The court recognized that the lender "completely dominates the debtor" and the need for DIP financing was caused by the parent company. *Id.* The Court further stated that the parent company conceived the scenario for its own benefit and "should not be permitted to foist off any unavoidable negative consequences upon other parties." *Id.* Finally, the Court stated that the circumstances were created by Lender, "which is not an outside lender but the puppeteer of a marionette-debtor." *Id.* at 402. Accordingly, the Court concluded that the proposed agreement was not "fair, reasonable, and adequate" and "it is not fair to give [parent company] a priority over the Debtor's innocent unsecured secured creditors." *Id.* Other courts have reached similar conclusions. *In re Phase-I Molecular Toxicology Inc.*, 285 B.R. 494 (Bankr. D. N.M.

2002) (holding that debtor may not borrow on a secured basis from the debtor's largest shareholder).

12.    Here, like in *In re St. Mary Hospital*, Blue Sugars completely dominates WBE. Also, like in *In re St. Mary Hospital*, WBE is attempting to obtain this financing for Blue Sugars' benefit, so Blue Sugars will obtain a secured, super-priority claim, thus eliminating any risk to Blue Sugars at the expense of both existing secured creditors and, of course, all unsecured creditors.  Blue Sugars will drastically and unfairly improve its position in the bankruptcy proceedings if the motion is granted, since Blue Sugars must ultimately be treated in this case as an equity holder or an unsecured creditor.  Blue Sugars has a huge claim which it has attempted to characterize in the Debtor's schedules as secured.  However, the "secured" claim is based on a financing statement filed less than a month prior to the filing of WBE's bankruptcy petition.  It is clearly subject to attack as both a preference and a fraudulent conveyance.  In addition, Blue Sugars' claim is vulnerable to recharacterization as equity under the facts of this case.  Furthermore, the amount of the secured claim cannot be anywhere near the amount listed in the schedules, given other information about the value of assets known to the Debtor and Blue Sugars, as well as the secured creditors that currently have priority.  Finally, since its inception, WBE was designed to be only a cost center for Blue Sugars and has completely relied on funding provided by Blue Sugars. The only reason WBE needs additional funding at this time is because it is waiting for Blue Sugars to provide it with additional funds, as it always has.  Like the Court found in *In re St. Mary Hospital*, the proposed agreement is

not "fair, reasonable, and adequate" and "it is not fair to give [parent company] a priority over the Debtor's innocent unsecured secured creditors." *Id.* at 402.

13.    Additionally, "proposed financing will not be approved where it is apparent that the purpose of the financing is to benefit a creditor rather than the estate." *In re Ames Dep't Stores*, 115 B.R. 34, 39 (Bankr. S.D.N.Y.); *In re General Growth Properties, Inc.*, 423 B.R. 716, 725 (S.D.N.Y. 2010). Here, the entire purpose of the motion is to improve Blue Sugar's position in the estate and guarantee Blue Sugars will recover additional funds that it will likely provide to WBE, regardless of whether this motion is granted. *See Crouse*, 71 B.R. at 551 (refusing to authorize debtor-in-possession financing because the court believed that the proposed lender was acting principally in its own interests and that it would fund the debtor anyway). Thus, the financing is not in the best interests of the estate and its creditors.

14.    WBE must demonstrate that "no alternative financing is available on any other basis." *In re Phase-I Molecular Toxicology Inc.*, 285 B.R. at 494. A court "may not approve any credit transaction under subsection (c) unless the debtor demonstrates that it has reasonably attempted, but failed, to obtain unsecured credit under sections 364(a) or (b)." *In re Ames Dep't. Stores, Inc.*, 115 B.R. at 37. Here, the Debtor's conduct and this motion demonstrates that Debtor **could and did** obtain unsecured credit from Blue Sugars. Debtor does not claim that Blue Sugars will only provide future funds if it has a secured superpriority claim. Instead, Blue Sugars allocated more money to WBE on an unsecured basis without this Court's permission and without notice and a hearing, as it has always funded WBE and will likely continue to do to keep the plant

open, whether it has a secured, superpriority claim, or not. Thus, the Debtor has not demonstrated that it is unable to obtain unsecured credit from Blue Sugars.

15.    Moreover, Debtor has only contacted two (2) potential lenders in an attempt to obtain financing. One of the lenders debtor contacted was Security National Bank of Omaha. Security National Bank of Omaha is currently a secured creditor and elected not to provide additional funds to WBE. The only other lending entity Debtor apparently contacted was EFO Holdings out of Dallas, Texas.

16.    Although a debtor is not required to seek credit from every possible source, *see In re Snowshoe Co., Inc.,* 789 F.2d 1085, 1088 (4th Cir.1986), a debtor must show that it made a "reasonable effort" to obtain post-petition financing from other potential lenders on less onerous terms and that such financing was unavailable. *See In re Ames Dept. Stores,* 115 B.R. at 34 (citations omitted). A court must make its decision as to "[h]ow extensive the debtor's efforts to obtain credit must be" on a case-by-case basis. *In re Reading Tube Industries,* 72 B.R. 329, 332 (Bankr. E.D. Pa. 1987); *Suntrust Bank v. Den-Mark Const., Inc.,* 406 B.R. 683, 691 (E.D.N.C. 2009).

17.    Contacting only two lenders, and only one lender outside of the related bankruptcy is insufficient to demonstrate that no alternative financing is available. *See Crouse,* 71 B.R. at 550 (finding that debtors who approached only one lending institution failed to show "the requisite exhaustive unsuccessful efforts to obtain credit on terms in accordance with § 364(b)."); *In re Stacy Farms,* 78 B.R. 494, 498 (Bankr. S.D. Ohio 1987) (noting debtor failed to carry its burden under § 364(d) where there was no evidence that debtor had applied for loans from institutions other than pre-petition senior

lender and priming lender). At a minimum, in order to satisfy this requirement, the debtor must have contacted at least three to four lenders. *See In re Ames Dept. Stores,* 115 B.R. at 40 (asserting the fact that the debtors had contacted "four leading lending institutions" satisfied the requirement of § 364); *In re Dunes Casino Hotel,* 69 B.R. 784, 791 (Bankr. D. N.J. 1986) (finding debtor had made the required effort under section 364(d)(1) based on evidence that the debtor had attempted unsuccessfully to borrow funds on an unsecured basis or secured by junior liens, but that at least three such lenders were willing only to advance funds secured by a super-priority lien). Thus, WBE has failed to establish that alternate financing was not available because they failed to contact a sufficient number of financial institutions.

18.     Here, WBE's efforts to obtain other financing were Blue Sugars' efforts. No effort was apparently made to obtain financing from sources such as equity holders, guarantors of WBE's debt or others who might have made such a loan based on other cash infusions apparently made only days before WBE filed for bankruptcy.   More importantly, Blue Sugars' has made no allegation that it offered a junior lien to any possible lender rather than a superpriority lien that would unfairly put it ahead of existing secured creditors.   In fact, the prior infusion of funds that occurred a few days before the bankruptcy filing was all made on a junior lien priority basis.

19.     Under the circumstances, if the Court determines that Blue Sugars' allocation of funds to WBE should be treated as a loan on a go-forward basis, the Court should not accord that loan superpriority lien status, but at best, should allow junior priority status.   Debtor is expected to make much of the alleged "equity cushion"

12

currently enjoyed by existing secured creditors. While the facts underlying that argument are in dispute, if it is true that there is some "equity cushion", Blue Sugars' should have no need for superpriority status for the amount involved here. Blue Sugars' push for superpriority lien status is unnecessary and unfair if it truly believes that there is significant equity, and to allow superpriority lien status under the circumstances of this case would completely and unfairly shift the risk of a lack of real equity to the existing secured creditors and unsecured creditors, while rewarding Blue Sugars by guaranteeing it will get its money back out when it fails to effectively reorganize WBE.

20.   Finally, given the facts of this case, there is virtually no prospect for an effective reorganization of Debtor. In fact, Debtor itself has no basis upon which to reorganize at all, since it has no revenues, no contracts, no pending work, and no way to obtain any except through the largesse of Blue Sugars, its parent company. This case does not belong in Chapter 11, and the Debtor's motion is clearly oriented more toward the protection of Blue Sugars than it is toward any effective reorganization. *See In re DB Capital Holding, LLC*, 454 B.R. 804, 822 (D. Colo. 2011) (In considering whether to allow superpriority financing under § 364(d), courts may consider "the prospects for successful reorganization of the Debtor's affairs") (quoting *In re Tashjian*, 72 B.R. 968, 973 (Bankr. E.D. Pa. 1987)); *In re Tenney Village Co., Inc.*, 104 B.R. 562 (Bankr. D. N.H. 1989) (ruling that the debtor's proposed Chapter 11 secured financing agreement with a bank under 11 U.S.C.A. § 364(d) would not be approved where there was no likelihood of successful reorganization); James L. Buchwalter,   *Construction and*

*Application of Bankruptcy "Superpriority Lien" or "Priming Lien" Provision, 11*

*U.S.C.A. § 364(d)*, 63 A.L.R. Fed. 2d 563, §20 (2012).

## CONCLUSION

Security National Bank of Omaha objects to WBE's motion and respectfully requests this Court deny WBE's motion regarding debtor-in-possession financing in all respects  Allowing the debtor to obtain debtor-in-possession financing *nunc pro tunc* is inconsistent with 11 U.S.C. § 364. Second, it is not fair to give WBE's parent company, Blue Sugars, priority over the Debtor's innocent secured and unsecured secured creditors. WBE has failed to establish the requirements necessary to secure approval of post-petition financing pursuant to 11 U.S.C. §§ 364(c) and/or (d).  WBE cannot show that no alternative financing is available on any other basis and that the financing is in the best interests of the estate and its creditors.  Instead, authorizing financing would be unfair and unreasonable. Finally, the Court must look at this motion in the context of the extreme unlikelihood of an effective reorganization.  Accordingly, WBE's motion should be denied.

Dated this 31st day of December, 2012.

_/s/ Gregory C. Dyekman_
Gregory C. Dyekman– Wyo. Bar No. 5-1858,
Dray, Dyekman, Reed and Healey, P.C.
204 East 22nd Street
Cheyenne, Wyoming  82001-3799
(307) 634-8891 – Telephone
(307) 634-8902 – Facsimile

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, Gregory C. Dyekman, does hereby certify that on December 31, 2012, copies of the foregoing <u>SECURITY NATIONAL BANK'S OBJECTION</u> referenced therein were served by electronic mail and/or by placing the same in the U.S. Mail, postage prepared, to all parties on the attached list.

DATED December 31, 2012.

_____/s/ Gregory C. Dyekman_____
Gregory C. Dyekman

Western Biomass Energy LLC
Case No. 12-21085
Mailing Matrix-LIMITED
SERVICE

| | | |
|---|---|---|
| | Midwest Mechanical Contractors<br>13800 Wyandotte St<br>Kansas City, MO 64145 | Midwest Renewable Energy LLC<br>c/o Penny Thelen<br>3610 Dodge Street, #212<br>Omaha, NE 68131 |
| Western Industrial Contractors<br>Attn: Robert M. Vacek<br>14805 East Moncrieff Place<br>Aurora, CO 80011 | Miller Fabrication LLC<br>PO Box 4652, Dept 254<br>Houston, TX 77210-4652 | Andritz Environment & Process<br>PO Box 120312, Dept 0312<br>Dallas, TX 75212-0312 |
| Flottweg Separation Tech, Inc.<br>PO Box 635920<br>Cincinnati, OH 45263-5920 | Snow Crest Chemicals<br>PO Box 50584<br>Billings, MT 59105 | Vincent Corporation<br>2810 East 5th Ave<br>Tampa, FL 33605 |
| Kimball Midwest<br>Dept. L-2780<br>Columbus, OH 43260-2780 | Martin Trans-Logics, Inc<br>PO Box 59<br>3601 W Tickman Street<br>Sioux Falls, SD 57101 | L&H Industrial, Inc.<br>Attn: Teryl McGriff<br>913 L&J Court<br>Gillette, WY 82716 |
| Voith Meri Environmental Solution<br>PO Box 1262<br>Appleton, WI 54912-262 | Bio Springer North America<br>321 de la Commune #300<br>Montreal QC Canada<br>H2Y 2E1 | Midland Scientific, Inc.<br>PO Box 310304<br>Des Moines, IA 50331-0304 |
| University of Tennessee<br>Institute of Agriculture<br>103 Morgan Hall<br>Knoxville, TN 37996-4506 | Hienrich Frings GmbH & Co. KG<br>Post fach 1540<br>53005 Bonn | Solutions Dynamics<br>PO Box 866<br>Brookfield, WI 53008 |
| Weston County Treasurer<br>1 Main Street<br>Newcastle, WY 82701 | Airgas Intermountain, Inc<br>PO Box 7430<br>Pasadena, CA 91109-7430 | add blue Consultoria, Ltda<br>Rua Jaoquim Nabuca, 47, cjt, 81<br>San Paulo-SP CEPI4621-000<br>Brazil |
| First National Bank of Omaha<br>1620 Dodge Street, Stop 1050<br>Omaha, NE 68197 | GDA Consult SA<br>147 Rue d'Eglise<br>Brussels, B-1150 Belgium | Greenberg & Traurig<br>Attn: Raymond Lee<br>3161 Michelson Drive, #1000<br>Irvine, CA 92612 |
| Signet Global Investors Limited<br>Attn Philip Boylan<br>5th Floor Beau Lane House<br>Mercer Street Lower Dublin, Ireland 2 | TMF Trustees Singapore<br>Trustee for John Eric Buckens<br>Brumby House, Jalan Bahasa<br>Box 80148 Lubuan F.T., Malaysia 87011 | Warcoing Sucre SA<br>Rue Gachard 88/16<br>Brussels, Belgium 1050 |
| Security National Bank of Omaha<br>PO Box 31400<br>Omaha, NE 68131-0400 | Blue Sugars Corporation<br>525 University Loop, #111<br>Rapid City, SD 57701 | John C. Smiley<br>Counsel for Committee<br>600 17th Street, #1800 South<br>Denver, CO 80202-5900 |

Western Biomass Energy, LLC
Case No. 12-21085
CM/ECF Electronic Mailing Matrix

- **Gregory C. Dyekman** greg.dyekman@draylaw.com; GCDWyo@aol.com; monica.lincoln@draylaw.com
- **Mark E. Macy** mark@macylaw.net, office@macylaw.net
- **Daniel J. Morse** daniel.j.morse@usdoj.gov
- **John C. Smiley** jsmiley@lindquist.com; stoms@lindquist.com;hlewis@lindquist.com; mgilbert@lindquist.com
- **US Trustee** USTPRegion19.cy.ecf@usdoj.gov
- **Stephen R. Winship** steve@winshipandwinship.com;brad@winshipandwinship.com; gayleenwilde@winshipandwinship.com;don@winshipandwinship.com;billie@winshipandwinship.com;
- **Timothy L. Woznick** Tim.Woznick@draylaw.com, monica.lincoln@draylaw.com