IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF WYOMING

FILED

11:05 am, 8/6/13

Tim J. Ellis
Clerk of Court

| | |
|---|---|
| In re ) | |
| ) | |
| WESTERN BIOMASS ENERGY LLC ) | Case No.   12-21085 |
| ) | Chapter 7 |
| ) | |
| Debtor. ) | |

### OPINION ON OBJECTION TO SALE AND MOTION FOR ENTRY OF AN ORDER DENYING CONFIRMATION OF THE SALE OF SUBSTANTIALLY ALL OF DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS AND SETTING ASIDE SALE

On July 30, 2013, this matter came before the court for an evidentiary hearing on the *Objection to Sale and Motion for Entry of an Order Denying Confirmation of the Sale of Substantially All of Debtor's Assets Free and Clear of Liens, Claims and Interests and Setting Aside Sale* ("Objection") filed by Security National Bank of Omaha ("Security Bank"); the response and joinder filed by the Official Unsecured Creditors' Committee ("OUCC") and the responses filed by Western Biomass Energy LLC ("Debtor"), GeoSynFuels, LLC ("GeoSyn"), and Great American Group, LLC ("Great American"). Also present at the hearing was American Process, Inc. ("API"). The parties were represented as stated on the record. At the conclusion of the two-day evidentiary hearing, the court took the matter under advisement.[1]

---

[1] The court concurrently held the evidentiary hearing for the above-captioned matter with the evidentiary hearings for the Motion for Approval of Sale of Personal Property (Docket 194), and Motion to Approve Settlement Agreement (Docket No. 198), filed by Western Biomass. All motions were taken under advisement.

**Jurisdiction**

The court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the definition of 28 U.S.C. § 157(b)(2)(A) and (N).

**Findings of Facts**

Western Biomass is a demonstration/research and development ethanol plant located in Upton, Wyoming. It filed its chapter 11 petition and schedules on October 31, 2012. On February 26, 2013, Debtor filed an *Application to Employ Great American Group, LLC as Financial Consultant and Liquidator*. The court granted the application. The Committee filed a request to have the court reconsider its order, to give the Committee time to review. The Committee subsequently withdrew its motion for reconsideration on March 5, 2013.

Debtor filed its *Motion for Approval of Auction Sale of Personal Property* ("Auction Motion") on April 5, 2013. Finding that no objections to the Auction Motion were filed, the court approved the motion with its "Amended Order Authorizing and Approving Auction Sale of Substantially All of the Debtor's Assets Free and Clear of Liens, Claims and Interests." ("Auction Order"). Thereafter, Great American marketed and sold the assets by an on-line auction on June 11 and 12, 2013 to GeoSyn for the sale price of $525,000.00.[2]

---

[2] Great American was paid the sale amount and 15% buyers' premium.

Page 2

Security Bank filed its Objection requesting that the Court refuse to confirm the sale alleging that the sale should be set-aside due to a grossly inadequate price and irregularities in the sale process.

The responses that were filed include:

(1) <u>Debtor</u>

Debtor joins Security Bank's objection. Subsequent to the conclusion of, but prior to confirmation of the on-line auction, Debtor received an offer to purchase the assets from API for the purchase price of $1,218,750.00. Debtor seeks the court's approval (1) of the sale of the assets to API; and, (2) of the settlement between Security Bank and Debtor providing for a "carve-out" in the amount of $325,000.00 from the API sale proceeds for the benefit of the estate to pay the estate's administrative costs of attorneys' fees and provide for a "meaningful distribution to unsecured creditors." Debtor argues that it has a fiduciary duty to maximize the value of the bankruptcy estate.

(2) <u>OUCC</u>

The OUCC joins Security Bank's and Debtor's objections, incorporating their arguments. OUCC further argues that, bankruptcy courts are courts of equity. The only ability for unsecured creditors to receive a distribution is upon the court's denial of confirmation of the on-line auction to GeoSyn and approval of a sale that will provide a "carve-out" for the estate's administrative expenses and distribution to unsecured creditors.

(3)   GeoSyn

GeoSyn was the "winning" bidder for the estate's assets during the on-line auction. GeoSyn argues that the on-line sale should be confirmed asserting: (1) Security Bank's objection is untimely and procedurally defective; (2) the purchase price represents the market value and not grossly inadequate; and, (3) the sale procedures were followed as outlined in the Auction Motion.

(4)   Great American

Great American was retained by the Debtor, without objection by any party and with this court's approval to expeditiously sell Debtor's assets. Great American does not take a position regarding whether the auction results should be confirmed, but objects to any finding that Great American did not conduct the auction according to the Auction Order, historical practices and industry standards.

(5)   API

API presented an offer subsequent to the auction to purchase all the estate's assets for the amount of $1,218,750.00. This offer provides for the "carve-out" settlement between Security Bank and Debtor to pay the bankruptcy estate's administrative fees and provide a distribution to unsecured creditors. GeoSyn objected to API's participation at the evidentiary hearing for lack of standing. The court took GeoSyn's objection under advisement.

**Discussion**

The issue before the court is whether to confirm the on-line auction of Debtor's assets conducted by Great American and purchased by GeoSyn. The Seventh Court of Appeals stated,

> "Under §363, the trustee or debtor in possession is the seller and the bankruptcy court gets involved only through the requirement of notice and a hearing. The statute fails to define the court's role clearly, but the practice is that the bankruptcy judge, following the hearing, issues an order authorizing the sale (if he decides the property should indeed be sold) and after the sale is made the judge issues a second order, confirming the sale. The confirmation order is appealable as a final order.[3]

In this case, the court approved the Auction Motion for "substantially all of the debtor's assets." No motion for approval of the actual sale to GeoSyn has been filed with this court. Usually this motion comes from the Debtor after the sale is completed. However, the Bank filed its objection to the confirmation of the sale before the Debtor filed any confirmation motion. Therefore, the court will determine whether the on-line auction shall be confirmed.

The purpose of § 363 bankruptcy auction is to attain the highest and best offer for the assets sold and serve the best interests of the estate and its creditors. To maximize the proceeds available to creditors, a bankruptcy court may exercise its broad discretion to reopen an auction or hold a second auction to consider an upset bid.

The Tenth Circuit holds that a judicial sale will not be denied confirmation or set

---

[3] *In re Met-L-Wood Corp.,* 861 F.2d 1012 (7th Cir 1988).

aside for mere inadequacy in price unless the price is so grossly inadequate as to shock the conscience of the court and is coupled with slight additional circumstances indicating unfairness.

(1)    Inadequacy of price.

GeoSyn was the highest bidder for all of the bankruptcy estate's assets submitting a bid for the amount of $525,000.00. The testimony received by the court, indicates that the Upton ethanol plant was a state-of-the-art facility, constructed with the best and highest quality equipment and components. Troy Guiness, Midwest Renewable Energy, LLC's general manager, testified about the Debtor's plant, stating, "It is a 'beautiful plant,' 'crisp,' 'clean,' 'well engineered,' and 'very well put together..'" Mr. Guiness is familiar with the plant, both historically and recently, adding: "rocket ship technology went into that plant."

Todd Filsinger, a qualified appraiser, appraised the ethanol plant in 2012 valuing it between $1.788 to $2.678 million. Mr. Filsinger testified that based on changes since that appraisal, both economic and political, the asset's value would be reduced 20 to 30 percent with a current value of $1.07 to $1.28 million.

Comparing the current appraised value and the amount received during the on-line auction, the court finds that the auction price is less that fifty percent of the value, when considering even the lower appraised value. The court finds that the sale price is grossly inadequate.

(2)    Additional circumstances indicating unfairness.

The Bankruptcy Court for the Western District of Tennessee, determined that a sale which provides only a partial payment to a single creditor, leaving all other creditors with nothing, could not be deemed to be in the best interest of all creditors.[4] In the case before this court, the resulting price received from the sale only provides a partial payment to one secured creditor, leaving all unsecured creditors with nothing. Additionally, based upon the consideration that the OUCC and Debtor might have the possibility of successfully obtaining a "carve-out" from sale proceeds for distributions to unsecured creditors, this court finds that the factor of an additional circumstance indicating unfairness as grounds to deny confirmation of a sale has been met.

(3)    Irregularities in the sale process

Security Bank, OUCC and Debtor (for the limited purpose of this section, collectively known as the "Objectors") urge the court to find that there were irregularities in the sale process. The Objectors assert that Great American did not comply with the conditions established in the Auction Order and Terms & Conditions of Sale.

The Auction Order, incorporating the Auction Motion describes, in detail, the sale process to sell the bankruptcy estate assets as a going concern, by piece meal, and the online auction process, specifically stating, "Great American will operate the auction according to historical practice..." The Auction Order adopts and incorporates the

---

[4] *In re Hart's Manufacturing Company, Inc.*, 383 B.R. 720 (Bankr. W.D.Tenn., 2008).

"Terms & Conditions of Sale." The court finds that these documents, which were presented by the Debtor and to which neither Security Bank and the OUCC objected, granted the auctioneer reasonable latitude in marketing and auctioning the assets. Debtor argues that Great American's technical violation of the Terms & Conditions of Sale, i.e., that of not requiring GeoSyn to provide twenty-five percent deposit is without harm, considering GeoSyn has paid the entire amount of its bid to Great American.

Additionally, this court relies upon the testimony of Keith McCormack, Senior Vice President of Security Bank, who testified that toward the conclusion of the on-line auction, when Security Bank realized the auction sale was not realizing the preferred results, it was willing to pay Great American for their services to shut the auction down. Mr. McCormack stated that it was 'not fair to the auctioneer,' that the auctioneer was 'owed for their auction,' and the auctioneer 'did what were instructed to do." The court cannot make the finding that Great American did not comply with the conditions established in the Auction Order and Terms & Conditions of Sale.

**Conclusion**

The court finds that Security Bank, the Debtor, and OUCC has met its burden in providing the court grounds to deny confirmation of this on-line auction. First, the price received was grossly inadequate and the circumstances that confirmation of the sale would result in a partial payment to one creditor leaving nothing for unsecured creditors indicates unfairness.

This opinion constitutes the Court's findings of fact and conclusions of law. A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021.

DATED this 6 day of August, 2013.

By the Court

HONORABLE PETER J. MCNIFF
United States Bankruptcy Judge

Service to:
    Gregory Dykeman
    Bradley Hunsicker
    Jay Smiley
    Isaac N. Sutphin
    Brent Cohen
    James Belcher