Isaac N. Sutphin
HOLLAND & HART LLP
2515 Warren Avenue, Suite 450
P.O. Box 1347
Cheyenne, WY  82003-1347
(307) 778-4263

Risa Lynn Wolf-Smith (admitted *pro hac vice*)
HOLLAND & HART LLP
555 17th Street, Suite 3200
Post Office Box 8749
Denver, CO  80201-8749
(303) 295-8011

ATTORNEYS FOR GEOSYNFUELS LLC

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 12-21085 |
| WESTERN BIOMASS ENERGY LLC, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |

## GEOSYNFUELS LLC's MOTION FOR A STAY OR OTHER RELIEF PENDING APPEAL

GeoSynFuels LLC ("GeoSyn"), by and through its attorneys Holland & Hart LLP,

respectfully submits this *Motion for a Stay or Other Relief Pending Appeal* ("*Motion*") from the

*Opinion on Objection to Sale and Motion for Entry of an Order Denying Confirmation of the*

*Sale of Substantially All of Debtor's Assets Free and Clear of Liens, Claims, and Interests and*

*Setting Aside Sale*  ("*Order Denying Confirmation of Sale*") (Dkt. 304), and the *Judgment on*

*Objection to Sale and Motion for Entry of an Order Denying Confirmation of the Sale of*

*Substantially All of Debtor's Assets Free and Clear of Liens, Claims and Interests and Setting*

*Aside Sale* (Dkt. 305), entered by the Bankruptcy Judge in this bankruptcy proceeding on August 6, 2013.

In support of this motion, GeoSyn states:

## I.      Introduction

Federal Rule of Bankruptcy Procedure 8005 permits this Court to stay an order or judgment or grant other relief pending appeal.  In this case, GeoSyn seeks an order prohibiting all parties to this appeal from activities in furtherance of a sale or other disposition of the Plant Assets until the BAP has issued its mandate in the pending appeal.  Such an order will protect the assets of Debtor Western Biomass Energy LLC ("Debtor"), from being sold a second time, when those assets ("Plant Assets") have already been sold in a valid and Court-approved auction sale to GeoSyn.  The Court has wrongly invalidated that initial sale to GeoSyn, and GeoSyn has appealed to the Bankruptcy Appellate Panel for the Tenth Circuit ("BAP") from the Court's improper *Order Denying Confirmation of Sale*.  GeoSyn simply requests an order that maintains the status quo pending appeal, by precluding the Chapter 7 Trustee from conducting a second auction of the Plant Assets or otherwise attempting to dispose of those assets.

Each of the relevant factors applicable to the entry of a stay or the grant of other relief under Rule 8005 overwhelmingly favors granting the *Motion* pending GeoSyn's appeal to the BAP.  Specifically:

- GeoSyn has made a strong showing in prior filings, and makes a strong showing below, that it is likely to succeed on the merits of the appeal, in other words, that the BAP is likely to reverse the *Order Denying Confirmation of Sale*.

2

- As the successful bidder at auction, GeoSyn will be irreparably injured absent an order that will maintain the status quo pending appeal by precluding the Trustee from conducting a second sale of the Plant Assets.

- The issuance of a stay or other relief will not substantially injure other parties interested in the proceeding.  GeoSyn has already delivered to Great American Group, LLC ("Great American"), the independent financial consultant and liquidator that conducted the auction, the $525,000 purchase price for the Plant Assets, and those funds will serve as security for the relief GeoSyn seeks through this *Motion*, ensuring that, if the BAP reverses the *Order Denying Confirmation of Sale*, GeoSyn will complete its purchase of the Plant Assets.  In the highly unlikely event that the BAP does *not* reverse the *Order Denying Confirmation of Sale*, other entities will remain free to purchase the Plant Assets once the appeal is concluded.

- The public interest lies in maintaining the status quo pending appeal, rather than in creating a situation where multiple parties will have conflicting claims to the Plant Assets.

## II.    Relevant Facts and Procedural History[1]

On April 5, 2013, Debtor filed its *Motion for Approval of Auction Sale of Personal Property* ("*Auction Sale Motion*") (Dkt. 136), which requested an expedited sale process in order to alleviate Debtor's mounting financial concerns.  On May 2, 2013, the Court entered its *Amended Order Authorizing and Approving Auction Sale of Substantially All of the Debtor's Assets Free and Clear of Liens, Claims, and Interests* ("*Sale Order*") (Dkt. 148), which granted

---

[1] For a detailed statement of the relevant facts and procedural history, *see GeoSyn Fuels LLC's Objection to Debtor's Motion for Approval of Sale of Personal Property and Motion to Approve Settlement Agreement* (Dkt. 257).

the *Auction Sale Motion* and both (a) authorized the sale by auction pursuant to detailed

procedures set forth in the *Sale Order*, and (b) approved the sale to the successful bidder.

In accordance with the *Sale Order*, Great American thoroughly marketed the Plant

Assets.  Despite soliciting bids from nearly 28,000 potential buyers in the synthetic fuel industry,

placing numerous printed advertisements, and sending over 180,000 additional targeted

solicitation emails, Great American did not receive any bids from Going Concern Buyers or

Piecemeal Buyers.  Therefore, as approved in the *Sale Order*, on June 11-12, 2013, Great

American conducted an on-line auction.

GeoSyn was the high bidder on each lot on which it bid at the on-line auction, with a total

purchase price of $525,000, plus a 15% buyer's premium of $78,750.00.  On June 20, 2013,

GeoSyn submitted payment in full for the auctioned Plant Assets to Great American.  On June

25, 2013, Debtor filed its *Final Report of Sale* (Dkt. 175), which was the final step in finalizing

the sale of the Plant Assets to GeoSyn.

Meanwhile, on June 20, 2013, Security National Bank of Omaha ("Security Bank"),

unhappy with the amount of GeoSyn's bid, filed its *Objection to Sale and Motion for Entry of an

Order Denying Conformation of the Sale of Substantially All of Debtor's Assets Free and Clear

of Liens, Claims and Interests and Setting Aside Sale* ("*Security Bank's Objection*") (Dkt. 165).

Debtor and the Official Unsecured Creditors' Committee ("OUCC") later joined in *Security

Bank's Objection*, (Dkts. 202, 218), and Debtor filed its *Motion for Approval of Sale of Personal

Property* ("*Sale Motion*") (Dkt. 194).  Through these filings, Debtor, Security Bank, and the

OUCC asked the Court to effectively nullify GeoSyn's purchase of the Plant Assets, and to

4

approve the sale to another entity, American Process, Inc. ("API"), of the very assets that

GeoSyn had purchased through a fairly conducted and Court-approved auction and sale.  API

had made an unsuccessful bid during the June 12, 2013 auction; after losing at auction, API tried

to invalidate the sale to GeoSyn by submitting a June 25, 2013 Offer to Purchase the Plant Assets

for $1,218,750, with a $368,750 "carveout" from that price to "satisfy administrative expenses

and provide a meaningful distribution to unsecured creditors of the estate."  *Sale Motion* at ¶ 5.

However, API never produced a signed purchase contract with Debtor; it never posted a deposit

to accompany its offer; and, on information and belief, it is no longer engaged in negotiations for

purchase of the Plant Assets.  In short, API appears to have proffered a dummy offer at an

artificially high price and with an alleged "carveout" to pay the estate's professionals, for the

transparent purpose of obtaining their buy-in – all in order to derail the *bona fide* sale to GeoSyn,

and to set the stage for a second auction.

      On June 20, 2013, Security Bank filed its *Motion to Stay Transfer of Assets Pending

Resolution of Security National Bank of Omaha's Objection* ("*Security Bank's Stay Motion*")

(Dkt. 167), which asked the Court to stay completion of the sale to GeoSyn.  Without benefit of a

response from GeoSyn, the Court granted *Security Bank's Stay Motion* the next day.  *Order

Staying Sale of Substantially All of Debtor's Assets* ("*Order Staying Sale to GeoSyn*") (Dkt. 171).

      GeoSyn responded to *Security Bank's Objection* and the pile-on objections of Debtor and

the UOCC.  *See Response to Objection to Sale and Motion for Entry of an Order Denying

Confirmation of the Sale of Substantially all of Debtor's Assets Free and Clear of Liens, Claims

and Interests and Setting Aside Sale* (Dkt. 176), and *Supplemental Response to Objection to Sale*

*and Motion for Entry of an Order Denying Confirmation of the Sale of Substantially all of*

*Debtor's Assets Free and Clear of Liens, Claims and Interests and Setting Aside Sale* (Dkt. 219).

Security Bank filed a reply (Dkt. 246), and the Court held a combined and confused hearing on

both matters (*Security Bank's Objection* and the *Sale Motion*) on July 30, 2013 (Dkt. 277).

      Despite the unfairness of the course of events summarized above, and contrary to law that

requires extraordinary circumstances such as fraud – none of which is present here – before a

bankruptcy court may vacate a prior order approving a sale, the Court entered the *Order Denying*

*Confirmation of Sale*, which has precluded GeoSyn from completing its purchase of the Plant

Assets.

      On August 14, 2013, GeoSyn filed its *Notice of Appeal* to the BAP (Dkt. 314).  The

appeal has been docketed as No. 13-059 (10th Cir. BAP).

**III.      Argument: The Court Should Grant GeoSyn's *Motion* to Maintain the Status Quo**

      As a preliminary matter, this Court has jurisdiction to decide the *Motion*, notwithstanding

that GeoSyn has perfected an appeal before the BAP.  Under Rule 8005, "a motion for a stay of

the judgment, order, or decree of a bankruptcy judge, for approval of a supersedeas bond, or for

other relief pending appeal must ordinarily be presented to the bankruptcy judge in the first

instance."  *See*, *e.g.*, *In re Colon*, 2007 WL 627664, *1 (Bankr. D. Kan. Feb. 26, 2007).

      The Tenth Circuit applies these four factors to determine whether to grant a stay pending

appeal pursuant to Rule 8005:

> (1) the likelihood that the party seeking the stay will prevail on the
> merits of the appeal; (2) the likelihood that the moving party will
> suffer irreparable injury unless the stay is granted; (3) whether

> granting the stay will result in substantial harm to the other parties
> to the appeal; and (4) the effect of granting the stay upon the public
> interest.

*In re Lang*, 305 B.R. 905, 911 (10th Cir. BAP 2004).

For the reasons discussed below, every one of these factors favors granting the interim relief requested in GeoSyn's *Motion*.

### A.      GeoSyn Is Likely to Prevail on the Merits of Its Appeal.

The central issue in GeoSyn's appeal to the BAP is whether this Court committed reversible error when it entered the *Order Denying Confirmation of Sale* and set aside a sale that it had previously approved – which was conducted in strict accordance with the approved procedures and resulted in a good faith purchase of the Plant Assets for a market price. GeoSyn is likely to prevail on the merits of the appeal for multiple reasons it has stated in prior filings in this Court, including those summarized here.

**As a matter of law, there was no basis for this Court to entertain a new bid after entry of its final sale order.**   It is well-established that once a bankruptcy court enters an order approving a sale, the court may not vacate its prior order except in extraordinary circumstances such as fraud, mistake or like infirmity, and the court's range of discretion is narrow.  *Smith v. Juhan*, 311 F.2d 670 (10th Cir. 1962); *In re Chung King*, 753 F.2d 547 (7th Cir. 1985); *In re Kreger*, 307 B.R. 106 (8th Cir. BAP 2004).  As the Tenth Circuit has explained:

> The rule is settled, and it seems to be universally approved, that
> after confirmation of a judicial sale neither inadequacy of price,
> nor offers of better prices, nor anything but fraud, accident,
> mistake, or some other cause for which equity would avoid a like
> sale between private parties, will warrant a court in avoiding the

7

> confirmation of the sale or in opening the latter and receiving
> subsequent bids….

*Smith*, 311 F.2d at 672.  Thus, only in extreme and limited circumstances may a court set aside a

sale confirmation order.  *See, e.g., In re BCD Corp.,* 119 F.3d 852 (10th Cir. 1997) (sale vacated

based on mistake where purchaser changed the terms of the sale by demanding reimbursement

for environmental clean-up costs); *Mason v. Ashback,* 383 F.2d 779 (10th Cir. 1967) (transfer

illusory where no notice of sale to creditors); *In re Donohue,* 410 B.R. 311 (Bank. D. Kan. 2009)

(agreed order reflecting proposed sale to secured lender set aside where no notice to parties in

interest).  No showing of such extreme circumstances has been made here.

Courts may not vacate approved sales absent extraordinary circumstances for an obvious

and fundamental reason – to protect the vested interest of the good faith buyer, here, GeoSyn:

> Where one's bid has been accepted, he has a vested interest which
> under the decisions may be destroyed only for the most cogent of
> reasons, such as fraud, or conduct which in effect amounts to
> fraud.  But as has been said many times, the mere fact that
> someone comes forward and offers to bid more will not be
> tolerated because it is an invasion of a right acquired by the
> successful bidder at a free and open sale and for the further and
> even more weighty reason that permitting this to be done would
> undermine confidence in judicial sales and thus defeat the end
> sought to be obtained, the protection of estates being thus
> liquidated.

*Smith*, 311 F.2d at 672–73.  *See also In re Webcor*, 392 F.2d 893, 899 (7th Cir. 1968) ("If parties

are to be encouraged to bid at judicial sales there must be stability in such sales and a time must

come when a fair bid is accepted and the proceedings are ended."); *In re Food Barn Stores, Inc.*,

107 F.3d 558, 565 (8th Cir. 1997) (internal citations and quotations omitted).  ("Finality and

regularity of proceedings are significant factors whenever the courts are involved in a sale of

property, for devotion to those principles encourages fervent bidding and ensures that interested

parties will sincerely extend their best and highest offers at the auction itself."); *In re Wintex,*

*Inc.,* 158 B.R. 540, 545 (D. Mass. 1992) (emphasizing the need for "fealty to bidders'

expectations" at auction).

 This policy of finality protects confirmed sales in bankruptcy unless "compelling

equities" outweigh the interests in finality and protection of the buyer's vested rights.  *In re*

*Chung King*, 753 F.2d at 550; *see also In re Transcont. Energy,* 683 F.2d 326, 328 (9th Cir.

1982)*; Matter of Cada Invests., Inc.*, 664 F.2d 1158, 1162 (9th Cir. 1981)*.*  Further, "after

confirmation, the offer of a substantially higher sale price alone is insufficient to set aside a

confirmed sale."  *In re Chung King*, 753 F.2d at 550; *see also Smith*, 311 F.2d at 672 ("the mere

fact that someone comes forward and offers to bid more will not be tolerated"); *cf. In re Kreger*,

307 B.R. at 111 ("once the order approving the sale is entered, that order represents a binding

obligation").

 The Court stated that "[n]o motion for approval of the actual sale to GeoSyn has been

filed with this court."  *Order Denying Confirmation of Sale*, at 5.  That statement, which appears

to be the predicate for the Court's belief that it could vacate the sale and deny GeoSyn its vested

rights in the purchase of the Plant Assets, is erroneous.  In this case, at Debtor's request and with

Security Bank's support and acquiescence, the Court's *Sale Order* was self-effectuating by its

own terms.  It provided in advance for pre-approval of a sale to the highest bidder(s) at the

Court-approved auction.  The procedure contemplated no further approval or confirmation by the

Court.  There was no two-step process here in which the Court first approved auction procedures

and then Debtor was required to submit the highest bid to the Court for approval.  To the contrary, the *Sale Order* specifically authorized Debtor to sell the Plant Assets and found that the sale would be a free and clear sale because one or more subsections of Section 363(f) had been satisfied:

> The Debtor may sell the Assets, and all interests it has therein, free and clear of all claims and interest of any kind or nature whatsoever because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.

*Sale Order*, at ¶ b.  In addition, the Court ordered that "valid liens shall attach to the proceeds." *Id.* at ¶ 2.  Sales proceeds were to be segregated in a separate Debtor-in-Possession account, and the Debtor was to file a final report pursuant to Rule 6004.  *Id.* at ¶¶ 1.a., 1.b., 3.  Last, Debtor was authorized to pay any creditor with a valid and perfected lien to the extent the claim was not in dispute.  *Id.* at ¶4.  These provisions further confirm that the *Sale Order* was an order confirming the sale – which could not be unwound absent a showing of extreme circumstances that shock the conscience of the Court – and that the sales proceeds could be immediately distributed.

The evidence before the Court was that GeoSyn followed and relied in good faith on the auction procedures as approved by the Court in a final sale order.  Its expectation that as the highest bidder at auction, it be permitted to purchase Debtor's assets should not have been thwarted.  Significantly, the Court found no irregularities in the sale process.  *Order Denying Confirmation of Sale*, at 7-8.  Nor did it find the price bid by GeoSyn to be unconscionable.  The Court relied solely on two findings:  (1) That "the sale price is grossly inadequate[,]" *id.* at 6; and

(2) that "the resulting price received from the sale only provides a partial payment to one secured creditor, leaving all unsecured creditors with nothing[,]" *id.* at 7, which the Court deemed "an additional circumstance indicating unfairness." *Id.* Neither of these circumstances meets the legal standard of "fraud, accident, mistake, or some other cause for which equity would avoid a like sale between private parties." *Smith*, 311 F.2d at 672.

The first circumstance – the Court's finding that "the sale price is grossly inadequate[,]"*Order Denying Confirmation of Sale*, at 6 – is clearly erroneous because the price was established through an auction the Court recognized was fairly conducted, and the auction price necessarily represents market value. *See infra* at 7–8. Significantly, it appears that the Court relied heavily on the ephemeral and nonbinding offer of API to reach its finding. That offer, on information and belief, has since vanished. More to the point, "neither inadequacy of price, nor offers of better prices,…will warrant a court in avoiding the confirmation of the sale or in opening the latter and receiving subsequent bids…." *Smith*, 311 F.2d at 672.

The second circumstance – that the GeoSyn bid price will "leav[e] all unsecured creditors with nothing" – is not a legally valid basis for setting aside a confirmed sale. It is common knowledge that a substantial percentage of bankruptcy cases are "no asset" cases in which nothing is left to be distributed to unsecured creditors. Where, as here, the collateral securing the first position secured creditor is worth less than the secured creditor's claim, that result is a foregone conclusion. While it may be unfortunate that there are insufficient assets available to pay unsecured creditors, there is nothing fundamentally "unfair" about that circumstance either as a matter of fact or of law, and this not unexpected circumstance persists in a host of

11

bankruptcy proceedings throughout the country.  In this case, Debtor had insufficient cash to pay

administrative expenses and professional fees, including quarterly fees owed to the United States

Trustee, and this Court converted the case to a Chapter 7 proceeding for that reason (Dkt. No.

287).  The Court's concern for unsecured creditors is particularly misplaced here, where the

dummy API offer and proposed "carveout" was a transparent (and unfortunately successful)

attempt to "buy" the professionals' support.

   Thus, there was no legal basis for the *Order Denying Confirmation of Sale*.  On this basis

alone, GeoSyn is likely to prevail on the merits of its appeal.

   **The Court clearly erred in deeming "grossly inadequate" the market price offered**

**by GeoSyn at auction.**  Beyond the fact that "inadequacy of price" is not a legally valid basis

for setting aside an approved sale, *see supra* at 6, the Court's finding that "the sale price is

grossly inadequate[,]" *Order Denying Confirmation of Sale*, at 6, is clearly erroneous and the

*Order Denying Confirmation of Sale* is independently likely to be reversed on that basis.

   The evidence showed that the auction was fair and open, it was conducted by an expert

and experienced auctioneer, at least 37 bidders participated, and GeoSyn's aggregate offer for

the Plant Assets was the highest bid.  The Court specifically rejected other parties' unsupportable

assertions of procedural irregularities in the sale process.  *Order Denying Confirmation of Sale*,

at 7.  Under these circumstances, the auction results necessarily prove that the GeoSyn purchase

price was fair market value, and the Court committed clear error in finding the price to be

"grossly inadequate."

Under well-established law, set forth in *In re Gil-Bern Indus.,* 526 F.2d 627, 629 (1st Cir. 1975) (superseded by statute), and its progeny, it is an abuse of discretion for a bankruptcy court to refuse to confirm an adequate bid received in a properly and fairly conducted auction sale. Commenting on the importance of this principle, the Second Circuit noted:

> …*Gil-Bern* properly reasoned that accepting the post-auction higher bid would be a "penny wise and pound foolish" practice, because it would encourage parties to submit low formal bids and then come back, if necessary, with higher post-auction offers….Or, perhaps worse, to permit the acceptance of post-auction bids might well entirely discourage bidding at bankruptcy sales.

*In re Fin. News Network, Inc.,* 980 F.2d 165. 169-170 (2d Cir. 1992).  Further, courts have regularly observed that "the fullest possible measure of fairness and finality is by way of a public auction."  *In re Psychometric Sys.,* 367 B.R. 670, 675 (Bankr. D. Colo. 2007); *see also In re Landscape Properties, Inc.,* 100 B.R. 445 (Bankr. E.D. Ark. 1988); *Matter of Ohio Corrugating Co.,* 59 B.R. 11 (Bankr. N.D. Ohio 1985).

In short, the fact of the fairly conducted auction itself is the best evidence that GeoSyn's purchase price cannot be considered "grossly inadequate."  Because that finding is the primary (though legally inadequate) underpinning of the Court's vacatur of the sale to GeoSyn, but it is clearly erroneous, the *Order Denying Confirmation of Sale* is likely to be reversed on appeal.

**<u>The Court erred in relying on the untimely, flimsy, and improper alternative offer from API.</u>**  The Court committed further reversible error in basing the *Order Denying Confirmation of Sale* in part on the post-auction offer tendered by API.  After describing the API

offer, *Order Denying Confirmation of Sale*, at 3, 4, the Court relied on that offer in vacating the

sale to GeoSyn:

> In the case before this court, the resulting price received from the
> sale only provides a partial payment to one secured creditor,
> leaving all unsecured creditors with nothing.  Additionally, based
> upon the consideration that the OUCC and Debtor might have the
> possibility of successfully obtaining a "carveout" from sale
> proceeds for distributions to unsecured creditors, this court finds
> that the factor of an additional circumstance indicating unfairness
> as grounds to deny confirmation of a sale has been met.

*Id.* at 7.  Because the API offer deserved no credence, as a matter of fact or law, the Court's

reliance on it for its "additional circumstances indicating unfairness" ruling independently makes

it likely that the BAP will reverse the *Order Denying Confirmation of Sale*.

      Although very little information about API has been disclosed, we know that API was

well aware of Debtor's intention to liquidate its assets.  It received notice of the auction no later

than May 16, 2013, and on June 12, 2013, API actually participated in the auction, offering to

purchase a large portion of the plant assets for $210,000.  However, API's bid was not the

highest or best bid, and it was not accepted.  API then waited until June 25, 2013 – 13 days after

the close of the auction – to rethink its bidding strategy and make a new uncommitted aggregate

bid for Debtor's previously sold assets.  Security Bank and API, whether acting in concert or not,

successfully – but improperly – leveraged GeoSyn's bid, and obtained all the benefits of a

stalking horse bid with none of the costs.

      Compounding the untimeliness of API's offer is the lack of any evidence substantiating

API's intent or ability to actually close on the purchase of the Plant Assets.  The only evidence of

API's potential purchase of the Plant Assets is a scant two-page Offer to Purchase dated June 25, 2013.  Although the API offer purported to convey a firm offer to purchase the Plant Assets for $1,218,750.00, there is no evidence of an accepted contract, and API posted no non-refundable deposit and stood to lose nothing if it failed to consummate the sale.  Now, it appears that API's alleged offer has been withdrawn.

The API offer was structured to essentially purchase the support of key parties – namely, the estate's professionals and its unsecured creditors – by agreeing to a $368,750 carveout from the proposed purchase price to "satisfy administrative expenses and provide a meaningful distribution to unsecured creditors of the estate."  *Sale Motion*, at ¶ 5.  However, neither Debtor nor Security Bank nor anyone else has ever disclosed the amount of money to be paid to unsecured creditors or the allocation between administrative and unsecured claims, and creditors were left to guess at their likely return.  More objectionable, the proposed distribution and allocation between just these two creditor classes completely ignored the claims of other competing creditors, such as secured creditors and priority claimants.

The proposed settlement and carveout amounted to an impermissible *sub rosa* plan that both violated the distribution scheme mandated by the Bankruptcy Code and omitted any real disclosure to creditors about what they might receive.  *In re Braniff Airways Inc.*, 700 F.2d 935 (5th Cir. 1983) (courts should reject a sale under Section 363 that is tantamount to an improper *"sub rosa"* liquidating plan without granting creditors the critical procedural safeguards and protections of Section 1129 of the Bankruptcy Code); *In re White Motor Credit Corp.*, 14 B.R.

15

Case 12-21085   Doc 317   Filed 08/20/13   Entered 08/20/13 15:31:19   Desc Main
Document       Page 16 of 21

584 (Bank. N.D. Ohio 1981) (asset sale under Section 363(b) conflicts with reorganization provisions of Chapter 11).

In short, the API offer and proposed "carveout" was untimely, appears to have been a sham, and violated the disclosure and distribution requirements of the Bankruptcy Code. The Court should not have relied upon that offer as any part of the basis for its *Order Denying Confirmation of Sale*. Yet the Court embraced the API offer as a basis for vacating the previously approved sale to GeoSyn. This independent error is likely to result in reversal on appeal.

**B.     GeoSyn Will Suffer Irreparable Injury Unless the Court Preserves the Status Quo Pending Appeal.**

Absent an order maintaining the status quo pending appeal, the Trustee will take steps to sell the Plant Assets, whether through a second auction or otherwise. Given the speed with which the first auction was conducted, it is almost certain that the second sale will be completed and the Plant Assets will be conveyed to a third party before the BAP issues its decision. GeoSyn will suffer a range of irreparable harm from a second sale. *First*, and most fundamentally, GeoSyn will likely be unable to bid on the property or otherwise purchase the Plant Assets in the second sale, because it committed its available liquid funds to the initial auction bid – and accepting return of its payment could jeopardize its position in this Court and on appeal that the initial auction purchase was proper and must be enforced.

*Second*, GeoSyn has incurred a variety of substantial sunk costs that would be entirely lost if the Plant Assets are sold to a third party during the pendency of GeoSyn's appeal. These

include the substantial legal costs it has incurred in its attempt to enforce this Court's Sale Order,

including in this appeal; the incalculable time and effort GeoSyn devoted to due diligence before

the auction; the significant loss in equity finance valuation that GeoSyn incurred in order to

rapidly procure funds to purchase the Plant Assets; the significant lost opportunities to generate

income that GeoSyn incurred while it engaged in fundraising to participate in the auction and

purchase the Plant Assets; and the time value of the purchase price.  GeoSyn has been

unknowingly caught in a vicious web of unexpected and unpredictable litigation and delay

merely because it innocently relied on and followed the auction and sale procedures approved

and mandated by this Court.  Because Debtor's estate is already administratively insolvent,

Debtor has no money or methods with which to compensate GeoSyn for these monetary and

nonmonetary damages.

    In addition, if a second sale to a third party proceeds, GeoSyn's current appeal "will be

rendered moot."  *Securities Investor Protection Corp. v. OTC Net, Inc.*, 1984 U.S. Dist. LEXIS

17810, *3-4 (D. Colo. 1984) (holding a petitioner's appeal moot because the asset was sold and

"it [was] undisputed that [petitioner] did not move for a stay…of the prior order denying him

sale."). If GeoSyn's current appeal is rendered moot, "[o]bviously, that result would be the

'quintessential form of prejudice'" to GeoSyn.  *In re Country Squire Assocs. of Carle Place,*

*L.P.*, 203 B.R. 182, 183 (2d Cir. BAP 1996) (citation omitted); *see also*, *e.g.*, In re Adelphia

Communs. Corp, 361 B.R. 337, 348 (S.D.N.Y. 2007) ("where the denial of a stay pending appeal

risks mooting *any* appeal of *significant* claims of error, the irreparable harm requirement is

satisfied"); *In re Norwich Historic Pres. Trust, LLC,* No. 3:05CV12, 2005 U.S. Dist. LEXIS

7171, 2005 WL 977067, at *3 (D. Conn. 2005) (acknowledging "persuasive" arguments that

although foreclosure sale would not injure appellant, appellant's concern that his appeal would be

mooted satisfied the irreparable harm requirement); *In re St. Johnsbury Trucking Co.,* 185 B.R.

687, 690 (S.D.N.Y. 1995) (finding sufficient irreparable injury where denying a stay would

threaten government's ability to appeal a bankruptcy court's decision); *In re Advanced Mining*

*Sys., Inc.,* 173 B.R. 467, 468-69 (S.D.N.Y. 1994) (finding irreparable injury prong met where,

absent a stay of the bankruptcy court's order, the distribution of assets to creditors would moot

any appeal and thus quintessentially prejudice appellants); In re Grandview Estates Assocs., Ltd.,

89 B.R. 42, 42-43 (Bankr. W.D. Mo. 1988) (declining to stay the foreclosure sale of an asbestos-

ridden apartment complex, but holding that irreparable injury is clearly shown where such sales

moot any appeal, and concluding that to hold otherwise would preclude appellate review, thus

running "contrary to the spirit of the bankruptcy system [and also] subvert[ing] the entire legal

process"). *Cf.* 11 U.S.C. § 363(m).

> **C.**  **Maintaining the Status Quo Pending Appeal Will Not Result in Substantial Harm to Other Parties to the Appeal.**

GeoSyn has delivered the purchase price to Great American, and Great American still

holds those funds in trust as security for the relief GeoSyn seeks in this Motion.  Accordingly,

there is no risk of substantial harm to other parties to the appeal.  If the BAP reverses the *Order*

*Denying Confirmation of Sale*, those funds will ensure GeoSyn's completion of the transaction

on the terms governing its purchase at auction.  If the BAP affirms the *Order Denying*

*Confirmation of Sale*, then the parties may proceed with a second auction or other disposition of

the Plant Assets.  Delaying that potential second sale will not reduce the value of, or sale price

for, the Plant Assets.

At the outset, the delay pending appeal should be relatively brief. *See* Tenth Circuit

Bankruptcy Appellate Panel , §1, available at

http://www.bap10.uscourts.gov/guide/appeals_overview.pdf  ("BAP appeals are resolved

quickly, with an average of less than 60 days from the time the appeal is submitted to a panel to

the time that a decision is entered.").  Moreover, given all the objectors' challenges to GeoSyn's

purchase price at auction, coupled with Security Bank's ability to obtain another bid (albeit, what

appears to be a sham bid) within several weeks of the auction date, the Court must presume that,

if the BAP affirms the *Order Denying Confirmation of Sale*, the Plant Assets can be sold again at

some date in the reasonably near future.

### D.    The Public Interest Will Be Served by Preserving the Status Quo Pending Appeal.

As discussed above, the *Order Denying Confirmation of Sale* is the culmination of an

impermissible collateral attack on a lawful and Court-approved sale of the Plant Assets to Geo-

Syn for a reasonable, market-based price.  The public interest will not be served by depriving a

*bona fide* purchaser in good faith of its vested rights, particularly where (1) the Court has not

made, and could not make, any finding of fraud or other extraordinary circumstances, and (2) the

Court improperly relied on a bogus competing offer.

The public interest will be served by preserving the status quo until the completion of

GeoSyn's appeal to the BAP.  During that relatively short period of time, it will serve all parties'

interest to leave the Plant Assets in Trustee's possession, until the BAP decides whether the Trustee must transfer those assets to GeoSyn.

## IV.    Conclusion

The *Order Denying Confirmation of Sale* is legally and factually wrong, contrary to the public interest, and irreparably harmful to GeoSyn.  Particularly in light of the strong likelihood that the BAP will reverse this Court's misguided agreement to scuttle the proper sale of the Plant Assets to GeoSyn, it is necessary and appropriate for the Court to order relief that will maintain the status quo pending appeal.

FOR THESE REASONS, GeoSyn respectfully requests the Court to grant this *Motion* and to order all parties to this appeal to refrain from activities in furtherance of a sale or other disposition of the Plant Assets until the BAP has issued its mandate in the pending appeal.

Dated:  August 20, 2013.

Respectfully submitted,

/s/ Isaac N. Sutphin
Isaac N. Sutphin
Wyoming State Bar #6-3711
HOLLAND & HART LLP
2515 Warren Avenue, Suite 450
P.O. Box 1347
Cheyenne, WY  82003-1347

Risa Lynn Wolf-Smith (admitted *pro hac vice*)
Colorado State Bar #15835
HOLLAND & HART LLP
555 17th Street, Suite 3200
Post Office Box 8749
Denver, CO  80201-8749

ATTORNEYS FOR GEOSYNFUELS LLC

## CERTIFICATE OF SERVICE

I, Isaac N. Sutphin, hereby certify that on August 20, 2013, a true and correct copy of the foregoing ***GeoSynFuels LLC's Motion for Stay or Other Relief Pending Appeal*** was served upon the Office of the United States Trustee and all Parties registered on the CMECF Electronic Mailing System.


/s/ Isaac N. Sutphin                                  


6363635_1.DOCX